# In the United States Court of Federal Claims

No. 18-1803C

(Filed: July 8, 2019)

| | |
|---|---|
| **MARK DUNNING INDUSTRIES, INC.,** | Motion for relief from judgment entered after a decision on a post-award bid protest; RCFC 60(b); reliance on newly discovered evidence; proffered evidence new but not extant prior to contractual award and resulting judgment; RCFC 60(b)(2); evidence not material; inapplicability of RCFC 60(b)(6) |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant** | |
| **and** | |
| **ZERO WASTE SOLUTIONS, INC.,** | |
| **Defendant-Intervenor.** | |

Nicholas T. Solosky, Fox Rothschild LLP, Washington, D.C., for plaintiff.  With him on the brief was Doug Hibshman, Fox Rothschild LLP, Washington, D.C.

Joseph A. Pixley, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Harry Parent, Trial Attorney, Contract & Fiscal Law Division, U.S. Army Legal Services Agency, Fort Belvoir, Virginia.

Megan C. Connor, PilieroMazza PLLC, Washington, D.C., for defendant-intervenor.

## OPINION AND ORDER

LETTOW, Senior Judge.

Pending before the court in this post-award bid protest is a motion for relief from judgment filed by plaintiff Mark Dunning Industries, Inc. ("Dunning") on June 6, 2019.  Pl.'s Mot. for Relief from the Judgment ("Pl.'s Mot."), ECF No. 54.  Dunning was the incumbent and losing bidder on a waste disposal contract for Fort Benning, Georgia, and it protested the Army's decision to award the contract to Zero Waste Solutions, Inc. ("Zero Waste").  *See generally Mark Dunning Indus., Inc. v. United States*, 142 Fed. Cl. 734 (2019).  On April 19, 2019, the court denied Dunning's motion for judgment on the administrative record and granted the cross-motion filed by the government.  *Id.* at 754.  Judgment was entered the same day.  *See* Judgment (Apr. 19, 2019), ECF No. 45.  Dunning's instant motion, filed pursuant to Rule 60(b)(2) and (6)

of the Rules of the Court of Federal Claims ("RCFC"), argues that information obtained at a meeting held on May 21, 2019, between Dunning, Zero Waste, and the Army "demonstrates . . . that the [Army] unequally treated bidders" and evidences an "ongoing and continuous procurement error and violation of the [solicitation]." Pl.'s Mem. of Law in Supp. of [Pl.'s Mot.] ("Pl.'s Mem.") at 2, 7, ECF No. 54-1. The government responded in opposition on June 27, 2019. *See* Def.'s Opp'n to [Pl.'s Mot.] ("Def.'s Opp'n"), ECF No. 59. Zero Waste did not respond. Dunning's reply reiterates that the evidence is post-judgment and "newly discovered" and should be considered by the court. Pl.'s Mem. in Further Support of Pl's Motion for Relief from Judgment ("Pl.'s Reply"), ECF No. 60.

On May 14, 2019, prior to the submission of instant motion, Dunning appealed the court's decision to the Court of Appeals for the Federal Circuit. *See* Notice of Appeal, ECF No. 53. Upon Dunning's filing of its motion for relief from the judgment, the Federal Circuit, pursuant to Rule 4(a)(4) of the Federal Rules of Appellate Procedure, deactivated the appeal pending resolution by this court of Dunning's motion. *See* Order of June 12, 2019, *Mark Dunning Indus., Inc. v. United States*, Fed. Cir. No. 19-1885, ECF No. 9.

The court concludes that Dunning's proffered evidence does not qualify under RCFC 60(b)(2) as "newly discovered" and, alternatively, is immaterial to the court's original decision and judgment. Accordingly, Dunning's motion for relief from the judgment is denied.

## BACKGROUND

In 2016, the Army issued a solicitation for solid waste disposal services for Fort Benning (the "solicitation"). *Mark Dunning Indus.*, 142 Fed. Cl. at 738. Dunning was the incumbent provider but lost the award in 2018 to Zero Waste in a two-way contest. *Id.* at 737, 740, 744. Dunning protested the award, alleging, among other things, two errors involving an on-site laydown yard, *i.e.*, a location where the contractor could store equipment when not in use. Specifically, Dunning argued that (1) Zero Waste's bid was unrealistically low because it failed to account for, among other omissions, the cost of obtaining a commercial laydown yard and instead assumed it could use space on Fort Benning for free, *id.* at 746-48, and (2) the Army disadvantaged Dunning by advising Dunning that the Army would not provide a free on-site laydown yard, but then informing Zero Waste that a free on-site laydown yard would be provided, *id.* at 753. The court rejected both arguments, finding that Zero Waste's price was not unreasonably low, that its bid conformed to the solicitation, and that no evidence existed to support Dunning's claim of unequal dissemination of information pre-bid. *Id.* at 750-51, 754.

Subsequently, Dunning, Zero Waste, and the Army participated in a May 21, 2019, meeting regarding arrangements for switching waste disposal service from Dunning to Zero Waste. Pl.'s Mot. Ex. A (Aff. of Brad Dunning (May 24, 2019) ("Dunning Aff.")) ¶ 4.[1] Dunning avers that during this meeting, the Army's Contracting Officer Representative stated that the Army would provide a free on-site laydown yard to Zero Waste once Dunning removed its equipment from the yard. Dunning Aff. ¶ 5; *see also* Pl.'s Mem. at 2 ("presumably at no cost"). Dunning argues that the solicitation "expressly provide[d] that the [Army] shall not provide any [g]overnment-furnished materials, property, or items, to include a laydown yard," Pl.'s Mem. at 4-5 (citing AR 25-1351 to 53), and that this new evidence confirms that the Army violated the solicitation, *id.* at 6-7. Dunning renews its contention that Zero Waste's bid relied

---

[1] Brad Dunning is Dunning's Vice President and Chief Operating Officer. Mr. Dunning attended the phase-in meeting. Dunning Aff. ¶3.

on the Army providing a free onsite laydown yard, *id.* at 8-9; Dunning Aff. ¶ 7, which makes Zero Waste's bid defective, *see, e.g.*, Pl.'s Mem. at 9.  Dunning alleges that the error caused prejudice because (1) Dunning raised its price relative to Zero Waste to incorporate an off-site laydown yard into its bid, and (2) the Army selected a defective bid.  *Id.* at 8-9.  Dunning contends that as the only other bidder, it would have won the contract but for these errors.

## ANALYSIS

RCFC 60(b) allows the court, upon motion, to relieve a party from a final judgment for, among other things, "newly discovered evidence."  RCFC 60(b)(2).[2]  Dunning must show that the proffered evidence is newly discovered, *id.*; *see also TDM Am., LLC v. United States*, 100 Fed. Cl. 485, 490 (2011), and material, *e.g.*, *Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1328 (Fed. Cir. 2006).[3]  For purposes of evaluating the evidence, the court assumes the affidavit's representation regarding the laydown yard to be true.[4]

---

[2]Dunning also moves for relief from the judgment under RCFC 60(b)(6), *see* Pl.'s Mot. at 1, which allows relief for "any other reason that justifies relief," RCFC 60(b)(6).  But because Dunning's motion focuses on new evidence, which RCFC 60 specifically identifies as a ground for relief in RCFC 60(b)(2), relief under RCFC 60(b)(6) is inappropriate.  *See Mudge v. United States*, 78 Fed. Cl. 818, 821 (2007) ("Rule 60(b)(6) is [a catch-all provision] available only in extraordinary circumstances and only when the basis for relief does not fall within any of the other subsections of Rule 60(b).") (alteration in original) (quoting *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002)).

[3]Dunning's motion is timely.  Timeliness requires that the motion "be made within a reasonable time" and no more than one year from entry of judgment, RCFC 60(c), and must offer "evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b)," RCFC 60(b)(2).  Under RCFC 59(b), a party may move for a new trial within 28 days of judgment or within two years if based upon evidence of "fraud, wrong, or injustice . . . to the United States."  RCFC 59(a)(1), (b).  Dunning's new evidence resulted from a meeting with the government held on May 21, 2019.  *See* Pl.'s Mem. at 3; Dunning Aff. ¶¶ 4, 5.  As the meeting occurred more than 28 days after judgment, the evidence was not available in time to move for a new trial.  Dunning's motion occured within two months of judgment and two weeks of the relevant meeting, a period that is not inherently unreasonable.

[4]The court notes, however, that the proffered new evidence relates to a contention that Dunning had made prior to the judgment about unequal pre-bid information.  *See, e.g.*, [Pl.'s] Suppl. to Reply Mem. in Further Supp. of Pl.'s Mot. for Judgment on the Admin. Record at 19, ECF No. 41 ("Later, at the *pre-award* meeting, the [Army] expressly advised [Zero Waste] that [the Army] would provide the laydown yard at no cost. . . . The [Army] . . . also instructed [Dunning] to clean up the laydown yard for use by [Zero Waste].") (emphasis added).  The court nevertheless considers whether the Dunning Affidavit constitutes new evidence because prior to judgment, Dunning offered only allegations, and not supporting evidence.  *See Mark Dunning Indus.*, 142 Fed. Cl. at 754 (discussing what the record actually reflected about the laydown yard).

[4]The court does not accept the assertion in the Dunning Affidavit that Zero Waste's bid omitted the cost of a laydown yard or its legal conclusion about what the solicitation required

Case 1:18-cv-01803-CFL   Document 61   Filed 07/08/19   Page 4 of 8

## A. Whether the Evidence is "Newly Discovered"

Dunning argues implicitly that its proffered evidence is new because it was obtained after judgment. *See* Pl.'s Mem. at 4; Pl.'s Reply at 2-3. The government contends that the evidence fails to qualify as "newly discovered" because it did not exist prior to judgment. Def.'s Opp'n at 8.

Newly discovered evidence encompasses only "facts which existed at the time of decision and of which the aggrieved party was excusably ignorant." *E.g.*, *TDM Am.*, 100 Fed. Cl. at 490 (quoting *Yachts Am., Inc. v. United States*, 8 Cl. Ct. 278, 281 (1985), *aff'd*, 779 F.2d 656 (Fed. Cir. 1985)). Dunning's ignorance of the proffered fact, *i.e.*, the Army's laydown yard statement, is excusable; it arose post-judgment. Equally, however, the fact adduced during that post-award meeting was not shown to have existed prior to judgment. Accordingly, the proffered evidence does not qualify as newly discovered. *See, e.g.*, *Q Integrated Cos., LLC v. United States*, 131 Fed. Cl. 125, 132-33 (2017) (finding a Small Business Administration size determination made six weeks after judgment was not "newly discovered").

Previously, during briefing of the cross-motions for judgment on the administrative record, Dunning did allege, albeit without evidence, that the Army intended to provide Zero Waste with a laydown yard and conveyed that intent before bids were due. *Mark Dunning Indus.*, 142 Fed. Cl. at 753-54. Dunning might implicitly argue that the Army's post-judgment statement reflects a pre-judgment decision. *Cf.* Pl.'s Mem. at 7 ("ongoing and continuous procurement error"); Pl.'s Reply at 1 ("[T]he Army concealed the information . . . until after the [c]ourt's decision."). The court finds such an inference to be speculative and unsupported,[5] but nonetheless proceeds to evaluate the materiality of the fact adduced had it otherwise qualified as newly discovered.

## B. Whether the Evidence is "Material"

Dunning's argument that its evidence is material because it "demonstrates the [Army's] ongoing and continuous procurement error," Pl.'s Mem. at 7, relies on several assumptions, which in effect raise new allegations of procurement errors. Dunning contends that the Army has violated the terms of the solicitation because the solicitation "expressly provides that the [Army] shall not provide [among other things] a laydown yard." Pl.'s Mem. at 4-7. Dunning reasserts its original, and rejected, contentions that the solicitation required Zero Waste to incorporate the cost of a laydown yard into its bid, that Zero Waste failed to do so, and that the Army erred by ignoring or overlooking Zero Waste's omission. Pl.'s Mem. at 6-9. The government does not directly address materiality but notes that the court already rejected the assumptions underlying Dunning's arguments, namely that Zero Waste submitted a defective bid or that the solicitation prevented the Army from providing a free laydown yard. *See* Def.'s Opp'n at 6.

---

bidders to do. *See* Dunning Aff. ¶ 7; *see also Mark Dunning Indus.*, 142 Fed. Cl. at 750 ("Dunning's specific allegations that work was excluded from Zero Waste's bid lacks support."). The court has already accepted that a contractor would benefit from being able to use a free on-site laydown yard. *Compare* Dunning Aff. ¶ 6, *with Mark Dunning Indus.*, 142 Fed. Cl. at 754.

[5]The Army's statement offered by Dunning contains no indicia that it reflects a pre-judgment decision.

Newly discovered evidence is material if the court's decision would have been different had the court been aware of it prior to judgment. *See, e.g.*, *Venture Indus.*, 457 F.3d at 1328; *Q Integrated*, 131 Fed. Cl. at 132. Specifically, materiality here turns on whether the court would have found the Army's award decision to be flawed had the court known that the Army would allow Zero Waste to use an on-site laydown yard for free.

While Dunning had previously claimed that the solicitation prohibited the Army from providing a laydown yard, Dunning's reframes its argument in its motion. In its original motion for judgment on the administrative record, Dunning presented two different contentions respecting the laydown yard. First, Dunning alleged that Zero Waste's bid was defective because it failed to account for the costs of a laydown yard. *Mark Dunning Indus.*, 142 Fed. Cl. at 748. Second, Dunning alleged that the Army prejudiced the bidding by telling Zero Waste that a free laydown yard would be available while telling Dunning to provide one at its own expense. *Id.* at 753. Dunning's current argument is that the Army's decision to let Zero Waste use a free on-site laydown yard "is contrary to the [solicitation] and has provided [Zero Waste] a material and unfair bidding advantage that was not offered to [Dunning]." Pl.'s Mem. at 2. In sum, Dunning argues that the court's original opinion did not address directly whether the Army could provide a laydown yard for free, but instead whether Zero Waste's bid was defective for allegedly not incorporating the cost of one and whether the Army's evaluation was defective if it had overlooked that omission.[6]

Dunning's challenge to the Army's decision requires showing that the Army's posture regarding the laydown yard was intended to affect the bids and the Army's evaluation of bids. To prejudice the evaluation, Dunning would first have to show that the solicitation required bidders to provide a laydown yard at its own cost, to reflect that need in its bid, and that Zero Waste did not do so while Dunning did. Dunning would then have to show that the Army either disregarded the requirement or overlooked an omission apparent on the face of the bid. The court previously addressed these questions, and Dunning's new evidence sheds no light on them.

1.  *Materiality to Zero Waste's bid.*

The solicitation called for award of the contract "to the responsible bidder whose bid represents the lowest price for the required services." *Mark Dunning Indus.*, 142 Fed. Cl. at 738 (quoting AR 25-1308). The court affirmed the Army's responsibility determination, *id.* at 752-53, and Dunning's affidavit does not bear upon it. Dunning renews its allegation that Zero Waste submitted a defective bid, Pl.'s Mem. at 2, 8, 9, but Dunning's new evidence does not relate to Zero Waste's bid. Rather, it speaks only to the Army's actions, and possibly intent. The court, however, already rejected Dunning's contention that Zero Waste's bid omitted key scopes of work, to include a laydown yard. *Mark Dunning Indus.*, 142 Fed. Cl. at 749-51. The court found no obligation to bid on a laydown yard—it was not identified as a contract line item. As a consequence, if a bidder had to provide a laydown yard at its own cost, "[p]resumably, a bidder would apportion the cost of a [laydown] yard among other line items. But Zero Waste had neither an obligation nor opportunity to break out such costs." *Id.* at 750.[7] Zero Waste

---

[6]Dunning does not reargue its original contention that the Army provided Dunning and Zero Waste with different information pre-bid, and its new evidence does not bear upon that point.

[7]That the solicitation placed upon the contractor the responsibility for providing "supplies, equipment, facilities, and services necessary to fulfill the requirements of the

facially complied by bidding on all line items and then affirmed its bid when questioned by the Army. *Id.* at 750-51. The solicitation thus required the Army to make its award to Zero Waste, the lowest priced responsive bidder. *Id.* at 738-39. The court noted that if Zero Waste had not priced certain ancillary costs into the line items it was required to bid, such as by assuming wrongly that the Army would provide a free laydown yard, "such a mistake is Zero Waste's to bear." *Id.* at 751. Of course, if Zero Waste assumed correctly, it would reap the benefit. Further, as the court noted, Zero Waste may bid at or below cost. *Id.* at 749-751 (noting that below-cost bidding bears only upon the bidder's responsibility). Applied to the laydown yard, Zero Waste had no obligation to pass on all or any of the cost of a laydown yard to the Army.

Contrary to Dunning's assertion, it is not "uncontested that [Zero Waste] failed to price a laydown yard in its bid." *See* Pl.'s Mem. at 5. Dunning's evidence of Zero Waste's alleged omission comes from another post-award affidavit of Mr. Dunning and an e-mail from Mr. Dunning to the Army after the Army announced that Zero Waste was the lowest bidder. Dunning also overstates the government's response to this contention. The government argued, and the court accepted, that the Army had no duty to divine precisely how Zero Waste factored a laydown yard into its bid because no line item existed for a laydown yard. *Mark Dunning Indus.*, 142 Fed. Cl. at 750. A laydown yard is not specifically enumerated among the items to be provided by the contractor. Instead, the need for one arises by implication, as the contractor would need to do something with its equipment when not in use. The solicitation required contractors to remove equipment from the base by the end of each day, and the solicitation disclaimed the Army's responsibility for storing the contractor's equipment. Accordingly, what the contractor planned to do with the equipment and how it would cover that cost was its responsibility, but that fact has no bearing on whether the bid was incomplete or whether the bid price was unreasonably low, except to the extent it bore on responsibility. *Id.* at 750-51. How the contractor planned to store its equipment did not need to be discussed in the bid. The Army did not need to approve a bidder's storage plan. Absent a specific requirement to bid a laydown yard, it was unnecessary to find whether Zero Waste did incorporate the cost of a yard into its the bid.[8]

--------

contract," AR 25-1352, did not create an implied requirement to identify the price of such equipment in the bid. The Army was contracting for waste disposal services, not for garbage bins, garbage trucks, or a laydown yard. *See Mark Dunning Indus.*, 142 Fed. Cl. at 742, 750. The solicitation required Zero Waste and Dunning to bid on the cost of providing the specified garbage removal services, such as weekly removal of a specified number of a specified container size, and not to detail every, or any, component that comprised the cost. *See id.*

[8]The court notes that the presentation of Dunning's bid is very similar to that of Zero Waste. Of specific relevance, Dunning's bid does not mention an off-site laydown yard, and it is not mentioned in the optional four-page narrative discussion Dunning provided at the end of its bid, which discussed its technical capabilities and past performance. AR 33-1638 to 41. The first time that Dunning claims to have incorporated the price of a laydown yard into its bid is after it learned that Zero Waste was the low bidder and in the context of arguing that Zero Waste's bid was defective, in part for failure to incorporate a laydown yard. *See* AR 40-1906 (asserting that its bid incorporated a laydown yard); AR 68-2267 to 68 (implying, when criticizing Zero Waste's bid, that Dunning incorporated the cost of a laydown yard).

2.   *Materiality to the Army's evaluation.*

Dunning's newly proffered evidence does show that the Army will provide Zero Waste with a laydown yard without cost, and that the Army made that decision at some point on or before May 21, 2019.  Dunning Aff. ¶ 5.  Dunning's new evidence, however, is material only if the solicitation prohibited the Army from providing a laydown yard.  By proceeding from that assumption, Dunning's new evidence provides it with a vehicle by which to raise another ground for protesting the procurement, a ground upon which the court did not directly opine because it was irrelevant to deciding Dunning's original claim that Zero Waste's bid was defective.  The question, then, is whether the solicitation prohibited the Army from providing a laydown yard.

The solicitation did not prohibit the Army from providing a laydown yard.  Dunning's argument relies on Section 6.5.1 in the solicitation's Performance Work Statement, which states in relevant part that the "Contractor shall furnish all supplies, equipment, facilities, and services necessary to fulfill the requirements of the contract, except for those [specified as provided by the government]."  Pl.'s Mem. at 5 (quoting AR 25-1352).  Dunning notes that Section 6.4 of the Performance Work Statement contained no requirement for the Army to furnish any property or materials.  *Id.* (citing AR 25-1351).  Another subsection, Subsection 6.5.1.3.3, provides that the "Contractor shall remove all vehicles, trailers and equipment from the installation at the end of each workday."  AR 25-1352.  The court's original opinion noted all of these provisions.  *Mark Dunning Indus.*, 142 Fed. Cl. at 738, 751 n.21, 754.  Dunning contends that this language makes "clear that the [Army] *will not* provide a laydown yard."  Pl.'s Mem. at 4 (emphasis in original).  The court disagrees with the contention and the supposed clarity of the solicitation in this regard, *Mark Dunning Indus.*, 142 Fed. Cl. at 738, 751 n.21, 754, because Dunning's contention ignores other relevant provisions of the solicitation.

The clauses cited by Dunning remove the Army's obligation, not its discretion.  What these clauses show is that the contractor should not rely on the Army's past practice of providing some resources, such as a laydown yard.  Dunning had been provided a laydown yard throughout its incumbency of the prior contract.  That the solicitation states that the Army need not provide anything does not then prohibit the Army from providing something.  But the court need not rely on linguistics to reach this conclusion.  The solicitation states it as well.  The court's discussion of these clauses also included stated exceptions.  *See Mark Dunning Indus.*, 142 Fed. Cl. at 738, 751 n.21, 754 (citing AR 25-1351 to 52).  Importantly, Section 6.4.2 of the Performance Work Statement provided that "the [g]overnment reserves the right to provide any of the materials, equipment and/or supplies [that Part 6.5 required the contractor to furnish]."  AR 25-1352; *see also Mark Dunning Indus.*, 142 Fed. Cl. at 738, 751 n.21 (citing AR 25-1352).  While Dunning contends that the solicitation "explicitly forecloses" the Army from providing a laydown yard, Pl.'s Mem. at 7, the court reached the opposite conclusion when considering the exception set out in Section 6.4.2.  If a laydown yard was implied by Part 6.5 as among the contractor's responsibilities, then the laydown yard was among the property covered by the exception of Section 6.4.2, which gave the Army the right to provide the laydown yard, among other things.[9]

---

[9]In sum, Dunning's new evidence offers information that has, at best, an attenuated connection to the reasons for the court's original decision.  Dunning's arguments instead appear as a collateral attack on the court's original findings.  *See, e.g.*, Pl.'s Mem. at 2 (Zero Waste "failed to include costs related to the laydown yard," making the bid defective), 7 ("[T]he [solicitation] directly and expressly contradicts the [c]ourt's conclusion."), 9 ("defective bid").

Further, the Army could waive the contractor's obligation to remove all equipment from the Army's property.  AR 25-1352; *see also Mark Dunning Indus.*, 142 Fed. Cl. at 754 (quoting AR 25-1352).  Thus, Dunning's new evidence cannot demonstrate that the Army violated the solicitation.[10]

## CONCLUSION

Dunning's affidavit does not meet the definition of "newly discovered evidence" within the meaning of RCFC 60(b)(2).  Dunning's evidence is also immaterial.  The affidavit's laydown-yard evidence does not reflect upon the propriety of Zero Waste's bid and relies on a flawed understanding of the solicitation's requirements.  Accordingly, Dunning's motion for relief from the judgment is DENIED.

It is so **ORDERED**.


s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

[10]Dunning also argues that the court's "erroneous" interpretation "appears to rely on pre-amendment solicitation documents that have no bearing on the procurement" because they were superseded.  Pl.'s Mem. at 7-8.  This asseveration is wrong.  The court's analysis twice referenced two answers to industry questions regarding a laydown yard provided by the Army via Amendment 0004 to the solicitation, which appear on AR 16-938 to 939.  The first instance occurs in a discussion of price reasonableness, as a footnote appended to a short discussion of how Zero Waste would bear the cost of a unilateral mistake.  *Mark Dunning Indus.*, 142 Fed. Cl. at 751 n.21.  The second instance appears in a discussion of Dunning's allegation of unequal pre-bid information and how different assumptions could have resulted from ambiguity within the solicitation, information that was equally available to all.  *Id.* at 754.  Both instances account for differences between the bids that do not involve the Army's alleged impropriety.

The court need only rely on the plain language of the final solicitation to find that the solicitation did not foreclose the Army from providing a laydown yard.  *See* AR 25-1351 to 52 (Sections 6.4, 6.4.2, 6.5.1, 6.5.1.3.3).